In the Matter of AMERICAN CENTRAL AIRLINES, INC., Debtor.

AMERICAN CENTRAL AIRLINES, INC., Plaintiff,

O'HARE REGIONAL CARRIER SCHEDULING COMMITTEE, Air Wisconsin, Alliance Airline, Britt Airways, Direct Air, Jetstream, Midstate Airline, Mississippi Valley Airline, SMB, and Simmons Airlines, Defendants.

Bankruptcy No. 85–00469–D.
Adv. No. 85–0295–D.

United States Bankruptcy Court,
·N.D. Iowa.

Aug. 7, 1985.

Eric W. Lam, Cedar Rapids, Iowa, for debtor.

Deborah Anderson, Des Moines, Iowa, for defendant Simmons Airlines.

RICHARD STAGEMAN, Bankruptcy Judge, sitting by designation.

## MEMORANDUM OF DECISION

The matter before the court is a complaint filed by the debtor-in-possession, American Central Airlines, Inc. ("Debtor"). The Debtor seeks the issuance of a temporary restraining order prohibiting the above named defendants from impairing its interest in landing slots at Chicago O'Hare ("O'Hare"). The Debtor also pleas for an order finding the Defendants in contempt and assessing damages.

On August 2, 1985, the court scheduled a hearing on this complaint to commence at 10:00 a.m. in the U.S. Court House in Des Moines, Iowa. Counsel for the Debtor noti-

fied the Defendants of the scheduled hearing on August 2, 1985.

The matter was heard as scheduled. The Debtor appeared by its counsel, Eric W. Lam. Defendant Simmons Airlines appeared by its counsel, Deborah Anderson. The court, after hearing the parties, conditionally lifted the automatic stay. The stay was lifted to permit the Debtor and the Defendants to engage in a fact finding meeting on August 6, 1985. The purpose of this fact finding was to determine whether the Debtor had violated the terms of an agreement with the O'Hare Regional Carrier Scheduling Committee. Following the meeting between the Debtor and the Defendants, the court reviewed the minutes of the meeting. Through this review, the court learned that the Defendants not only engaged in a fact finding session but also acted to deprive the Debtor of O'Hare landing slots. The court, now having the benefit of this evidence and the parties' legal arguments, makes the following findings of fact and conclusions of law.

## I.

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 8, 1985. Three months later, the Debtor received a letter of intent to purchase a substantial portion of its assets. The purchase offer was contingent on the availability of the Debtor's thirty-six (36) "slots" at O'Hare. These slots are the product of a Federal Aviation Administration ("FAA") rule which restricts the access of regional airlines (such as the Debtor) to O'Hare. The effect of the FAA's rule is to restrict any given regional airline from freely operating at O'Hare.

To orderly allocate the restricted access of regional airlines to O'Hare, the "O'Hare Regional Scheduling Committee" has been formed. Regional airlines which join the Committee are allocated access to O'Hare airspace during certain scheduled periods. At the time the Debtor's petition was filed, the Debtor had been allocated thirty-six slots. In late July, the Committee initiated a proceeding which would lead to the Debtor's loss of twenty (20) slots. On August 6, 1985, the Committee voted to deprive the Debtor of slots at O'Hare Airport. Because the Debtor believes that any loss of slots would thwart the efforts of investors to assist it in the reorganization effort, it seeks to enjoin the Committee from restricting its access to O'Hare.

The Debtor asserts that the Defendants' actions to restrict its access to O'Hare violated the automatic stay of 11 U.S.C. § 362(a). The filing of a bankruptcy petition "operates as a stay applicable to all entities of," among other things, "(1) the commencement or continuation ... [of a] proceeding against the debtor that was or could have been commenced before the commencement of the case ... and (3) any act to obtain possession of property of the estate ... or to exercise control over property of the estate." 11 U.S.C. § 362(a).

The initial question, therefore, is whether the Defendants' actions in reallocating the Debtor's slots constitute a "proceeding against the debtor" within the meaning of Section 362(a). The scope of the automatic stay is very broad and encompasses all proceedings whether or not before governmental tribunals. See S.Rep. No. 95–989, 95th Cong., 1st Sess., pp. 57, 340, reprinted in 1978 U.S.CODE CONG. & ADMIN.NEWS pp. 5787, 5837, 6297. This court recently held that actions taken by a surety to cancel a contract were "proceedings" within the scope of the automatic stay despite the informal and non-judicial nature of such actions. *In re Wegner Farms Co.*, 49 B.R. 440, 442 (Bkrtcy.N.D. Iowa 1985). Although the procedures employed by the Defendants to reallocate the Debtor's O'Hare slots are non-judicial in nature, the result of the procedures will be to deprive the Debtor of access to O'Hare. As such, the Defendants' actions in reallocating the Debtor's slots constituted a proceeding against the Debtor in contravention of Section 362(a)(1). Actions taken in violation of the automatic stay are void. *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 345, 84 L.Ed. 370 (1940); *In re Victoria Grain Co. of Mpls.*, 45 B.R. 2, 6

(Bkrtcy.D.Minn.1984) (citing thirteen cases in accord.). Thus, the Defendants' attempts to reallocate the Debtor's slots are held to be without effect.

■■■■ Furthermore, the reallocation of the Debtor's slots violates Section 362(a)(3) which prohibits "any act to obtain possession of property of the estate ... or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The filing of a bankruptcy petition creates an estate comprised of "all legal and equitable interests of the debtor in property ...". 11 U.S.C. § 541(a). As with the scope of the automatic stay, the definition of "property" for purposes of the Bankruptcy Code is broad. *In re Wegner Farms, Co.,* at 443. The definition includes all kinds of property, including tangible and intangible property. H.Rep. No. 595, 95th Cong., 1st Sess. 367; S.Rep. No. 95–989, 95th Cong. 2d Sess. 82, reprinted in 1978 U.S.CODE CONG. & ADMIN.NEWS pp. 5868, 6323. Contractual rights constitute intangible property which is included within the definition of property of the estate. *In re Wegner Farms, Co.,* at 443.

■■■ The scheduling agreement between the Debtor and the Defendants governs allocation of slots at O'Hare and is a binding legal contract.[1] The contract contains a "use it or lose it" provision which forces a surrender of slots if the slot is not operated to the specified capacity. The automatic stay was lifted to permit the Defendants to investigate whether the Debtor had fallen within the "use it or lose it" provision. The stay was not lifted, however, to permit the Defendants to enforce this contractual provision against the Debtor. The Defendants' findings as to the Debtor's compliance with the "use it or lose it" provision are based upon inconclusive evidence. Furthermore, any act to enforce this contractual provision against the Debtor's will constitutes an act to obtain possession of property of the estate and an attempt to exercise control over property of the estate. Such acts violate Section 362(a)(3) and are, therefore, without effect.

The estate includes not only the Debtor's interest in the scheduling agreement, but also the rights in the thirty-six slots presently allocated to the Debtor. The Defendants, citing *In re Air Illinois,* 53 B.R. 1 (Bkrtcy.S.D.Ill.1985) and *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983) assert that these slots are not property of the estate. Because the court has already found that the Defendants' efforts to reallocate the Debtor's slots are in violation of the automatic stay, it is not essential that the court hold that these slots are property of the estate. However, to the extent the *Air Illinois* and *Braniff* decisions can be construed as holding that the right of access to an airport is not property of the estate, this court concludes that these decisions are incorrect as a matter of law.

■ The *Air Illinois* court improperly relied on a provision of the Federal Aviation Act which states that "no certificate should confer any proprietary, property, or exclusive right in the use of any airspace, Federal airway, landing area, or air navigation facility." 49 U.S.C. § 1371(i). The "certificate" referred to in Section 1371(i) is a certificate issued by the Civil Aeronautics Board ("CAB"). Thus, the statute only bars the CAB from creating property rights in air space. There is no equivalent provision barring the FAA from creating a property interest through a grant of access to an airport. Because the *Air Illinois* court misconstrued 49 U.S.C. § 1371(i), this court is not persuaded by the *Air Illinois* holding.

■■■ Likewise, this court concludes that the Braniff court improperly narrowed the scope of 11 U.S.C. § 541. The Braniff court stated that airport "slots are actually

---

1. The presence of a contract right distinguishes the instant case from the cases which the Debtor cites for the inapplicability of Section 362(a) to airport slots. *See In re Air Illinois,* No. 84–40133, unpublished op., —— B.R. —— (Bkrtcy.S. D.Ill.1985); *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983). While the instant Debtor has a contractual interest in slot allocation, neither of the Debtors in *Air Illinois* or *Braniff* has such an interest.

restrictions on the use of property—air-planes; not property in themselves." *In re Braniff Airways*, at 942. The slots do indeed effect a restraint on the use of airplanes, however, possession of an air-port slot also entitles the holder to airport access at selected times. Although the FAA may remove a slot at any time, until such action is taken, the holder has a pos-sessory interest in a slot at the given air-port. Such a possessory interest must con-stitute property of the estate. H.Rep. No. 595, 95th Cong., 1st Sess. 367; S.Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.CODE CONG. & ADMIN.NEWS pp. 5868, 6323. The mere fact that an interest exists by the grace of government no longer precludes the interest from being treated as a property right. *Matter of Matto's, Inc.*, 9 B.R. 89, 91 (Bkrtcy.E.D. Mich.1981). This court concludes that the slots are property of the estate and that the Defendants' reallocation of the Debt-or's slots constituted an unlawful act to obtain possession of property of the estate. 11 U.S.C. § 362(a)(3).

## II.

■ Having determined that the at-tempt to reallocate the Debtor's slots con-stituted a violation of the automatic stay, the court must now determine whether the issuance of a temporary restraining order would be appropriate. *But see In re Land-mark Air Fund II*, 19 B.R. 556 (Bkrtcy.N. D.Ohio 1982) (Notwithstanding the inappli-cability of the automatic stay, the power remains in the court to issue injunctive relief under 11 U.S.C. § 105). To justify the entrance of a restraining order, the moving party must demonstrate: (1) that irreparable harm will be imposed on the bankruptcy estate if the restraint is not issued; (2) that there is a strong likelihood of success on the merits; (3) that the other parties will be minimally harmed by the restraint; and (4) that the entrance of the order will serve the public interest. *Data-phase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981).

■ It is apparent that without the pos-session of the thirty-six slots, the Debtor lacks the ability to attract the needed as-sistance of outside investors. In the event the Debtor is unsuccessful in obtaining an infusion of outside capital, the court con-cludes that any reorganization of the Debt-or is extremely unlikely. Even a tempo-rary reallocation of slots would prove very harmful as the idling of the Debtor's planes and workforce would strain the Debtor's financial wherewithal and would discourage further investor participation. Any reallocation of slots will irreparably harm the Debtor's reorganization effort.

In a bankruptcy context, the second factor of the preliminary injunction test requires an evaluation of the likelihood of reorganization. Assuming the Debtor re-tains its O'Hare slots, an infusion of out-side capital or a sale of assets is reasonably probable. With either the input of capital or the sale of assets, it appears that the Debtor will be able to retire its secured debt entirely and pay a significant dividend to the unsecured creditors. Without a real-location of slots, the Debtor will not be able to effect a successful reorganization.

In the absence of a restraining order, each of the regional named airline defend-ants, and others not named, would be enti-tled to additional slots. Viewed in this light, the harm created by the restraining order is minimal in that the restraint mere-ly denies the defendants and others a wind-fall of additional slots. Although the re-straining order temporarily will result in an inefficient use of slots, the cost created by this inefficiency will accrue only until the Debtor reactivates its operation. It is ap-parent that the Debtor has the ability to resume operation in a matter of days. The court concludes, therefore, that the De-fendants will be minimally harmed by the restraint order.

Finally, the issuance of a restraining or-der will serve the public interest. The Debtor is based in Dubuque, Iowa; it pres-ently provides service to the Dubuque area in excess of the level required by the FAA's "essential" service rule. Although

the essential service rule would insure that Dubuque would receive air service in the Debtor's absence, the evidence establishes that the level of service would be less than what is presently provided by the Debtor. In fact, a motivating force behind a Dubuque investment group's offer to purchase the Debtor is a concern that the present level of air service to Dubuque must be maintained. The group feels that the level of existing service is essential to Dubuque's financial stability. The court concludes that the economic development of Dubuque and therefore, the state of Iowa would be impaired if the Debtor were denied the opportunity to reorganize. The entrance of a temporary restraining order will, therefore, serve the public interest.

An appropriate order will be entered.