CARSON PIRIE SCOTT & COMPANY (SOUTHDALE), et al., petitioners, Relators,

v.

COUNTY OF HENNEPIN, Respondent.

CARSON PIRIE SCOTT & COMPANY (NORTHTOWN), petitioner, Relator,

v.

COUNTY OF ANOKA, Respondent.

CARSON PIRIE SCOTT & COMPANY (MAPLEWOOD), et al., petitioners, Relators,

v.

COUNTY OF RAMSEY, Respondent.

Nos. C2–93–565, C4–93–566 and C6–93–567.

Supreme Court of Minnesota.

Nov. 19, 1993.

Mark T. Solstad, David S. Wething, Minneapolis, MN, for Carson Pirie Scott & Co.

Mark Kapter Maher, Asst. Hennepin County Atty., Minneapolis, for Hennepin County.

Thomas G. Haluska, Asst. Anoka County Atty., Anoka, for Anoka County.

M. Jean Stepan, Asst. Ramsey County Atty., St. Paul, for Ramsey County.

SIMONETT, Justice.

Does the automatic stay provision of the bankruptcy code preclude the dismissal, for failure to pay real estate taxes, of the debtor taxpayer's Chapter 278 petitions? The Tax Court held that the dismissals were effective and not stayed. By certiorari the debtor taxpayer seeks review, and we affirm.

On May 8 and 13, 1991, relator Carson Pirie Scott and Company (Carson) filed petitions challenging the 1990 estimated market value on its property in Ramsey County (Highland and Maplewood) and its property in Hennepin County (Southdale, Ridgedale and Eden Prairie). Carson paid the first half of real estate taxes due May 15, 1991.

On August 23, 1991, Carson filed a petition for a Chapter 11 bankruptcy. On October 15, when the second half of real estate taxes came due, Carson neither paid the taxes nor sought a waiver of payment, and the petitions and proceedings thereunder were automatically dismissed pursuant to the mandate of Minn.Stat. § 278.03 (1992).[1]

The next year, on May 11 and 14, 1992, Carson filed petitions challenging the January 2, 1991 estimated market value of property in Anoka County (Northtown) and the Highland property, but it did not pay the first half of taxes due May 15, 1992, nor did it seek a waiver of payment. Again the petitions were automatically dismissed.

In January 1993, Carson moved the Minnesota Tax Court to reinstate the petitions, contending that the automatic stay un-

---

1. Minn.Stat. § 278.03 (1992) provides in pertinent part:

If the proceedings instituted by the filing of the petition have not been completed before the 16th day of May next following the filing, the petitioner shall pay to the county treasurer 50 percent of the tax levied for such year against the property involved. * * * * If the proceedings instituted by the filing of the petition have not been completed by the next October 16 * * * the petitioner shall pay to the county treasurer * * * 80 percent of the unpaid balance if the unpaid balance is over $2,000, unless permission to continue prosecution of the petition without payment is obtained as herein provided. * * *

Failure to make payment of the amount required when due shall operate automatically to dismiss the petition and all proceedings thereunder unless the payment is waived by an order of the court permitting the petitioner to continue prosecution of the petition without payment.

In deciding whether to grant an application to waive payment of taxes, section 278.03 further provides that the court considers if (1) the petition is taken in good faith, (2) there is probable cause to believe the tax may be less than 50 percent of the amount levied, and (3) it would be a hardship for the taxpayer to pay the tax.

der federal bankruptcy law voided the automatic dismissals. The Tax Court (Judge Doar) denied the motions, and Carson now appeals that ruling to us. The cases involving the three counties are consolidated for purposes of this appeal.

We turn, now, to the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362(a) (1988), which, in pertinent part, provides that the filing of a petition for bankruptcy operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, * * * of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> \*    \*    \*    \*    \*    \*
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> \*    \*    \*    \*    \*    \*
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

■ Carson claims it is entitled to a stay under any and all of these three subparagraphs. We take up each in turn.

### I.

We first consider subparagraph (a)(1) of section 362, quoted above, which stays the continuation of any prepetition "action or proceeding against the debtor." Carson, of course, does not want its petitions for tax relief stayed, nor does anyone claim that they should or could be. The tax petitions filed by Carson are proceedings initiated *by* the debtor, not *against* the debtor, and, consequently, the automatic bankruptcy stay of

subparagraph (a)(1) does not apply to the petitions and the proceedings thereunder.

Carson argues, however, that the "proceeding" involved here is not the court proceedings initiated by the filing of the tax petitions, but the prepetition tax assessment and collection administrative process, and it then points out that this administrative process is *against* the debtor. We are not persuaded by this argument. The administrative tax collection process runs its own course, and Minn.Stat. ch. 278 provides for a separate and distinct court proceeding, established by statute, which is initiated by the taxpayer filing a petition.[2]

■ Carson next argues that even if the proceeding at issue is the debtor's Chapter 278 petition, the automatic dismissal of that petition for nonpayment of taxes should be considered an independent action or proceeding which is against the debtor and, therefore, must be stayed. However, in determining whether a proceeding is *against* a debtor, the proceeding is to be viewed "at its inception." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1992) (quoting *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982)). Here the proceeding originated with the filing of the petition, which is, of course, *by* the taxpayer debtor. Carson points out that *Maritime* says, "Within a single case, some actions may be stayed, others not." 959 F.2d at 1204. The court in *Maritime*, however, was referring to multiple claims and multiple party litigation where, for example, a counterclaim or crossclaim *against* a debtor may be stayed while the claim *by* the debtor proceeds. But in a Chapter 278 proceeding, "(t)he petition, without any answer, return, or other pleading thereto, shall be tried * * *." Minn. Stat. § 278.05, subd. 1 (1992).

Instructive in this regard is *Freeman v. Commissioner*, 799 F.2d 1091 (5th Cir.1986). There the appellate court entered judgment

---

**2.** Minn.Stat. § 278.01, subd. 1 (1992) provides that any person with an interest in a parcel of land who claims, among other things, an unfair assessment or an over-valuation of the parcel, "may have the validity of the claim, defense, or objection determined by the district court * * *

or by the tax court." The statute specifies on whom copies of the petition are to be served and requires the filing of the petition with proof of service "in the office of the court administrator of the district court before the 16th day of May of the year in which the tax becomes payable."

affirming dismissal of the debtor's petition for redetermination of income tax liability, notwithstanding debtor's claim that the automatic stay applied. The Fifth Circuit reasoned that because the original proceeding had been initiated by the debtor's petition, the "subsequent appellate proceedings are also not against the debtor within the meaning of the automatic stay provisions of the Bankruptcy Code." *Id.* at 1093.

■ Carson next argues that if the automatic dismissal of its petition is not itself a *"proceeding* against the debtor," at least it is an *"action* against the debtor." Again we disagree. An "action" has been construed to mean some kind of affirmative action by an entity taken after investigation and deliberation characteristic of a discretionary decision. *In re Gull Air, Inc.,* 890 F.2d 1255, 1262 (1st Cir.1989). In *Gull Air,* the debtor airline lost its arrival and departure "slots" at LaGuardia airport by failing to use them for 60 days after it filed for bankruptcy. In the event of nonuse, FAA regulations required that the slots "shall be recalled." *Id.* at 1261. The First Circuit rejected the debtor's argument that the automatic stay provision should operate to stay the withdrawal of the airport slots. Because withdrawal of the slots was automatic and mandatory, allowing for no discretion by the FAA, the court held the withdrawal did not constitute an "action." *Id.* at 1263. Similarly, in this case dismissal of the petitions for nonpayment of the taxes was automatic and mandatory under Minn. Stat. § 278.03, and the automatic stay is not implicated.[3]

We hold, therefore, for the reasons above given, that subparagraph (a)(1) of the automatic stay provision does not stay the dismissal of Carson's tax petitions for nonpayment of taxes.

II.

Subparagraph (a)(3) stays "any act to obtain possession of property of the estate or of property from the estate." This subparagraph does not apply because, as we have seen, the dismissal of the tax petition is not an action or an act, but simply an event which occurs automatically by statutory mandate when the taxes are not paid. Presumably, no one would claim that dismissal for failure to pay filing fees for an appeal or to commence a lawsuit would be automatically stayed.

Finally, subparagraph (a)(6) stays "any act to collect, assess, or recover a claim against the debtor" that arose prepetition. At oral argument, Carson relied particularly on this provision. But this subparagraph is also of no help to Carson. First of all, the failure to pay real estate taxes, which triggered the automatic dismissals, occurred *after* the bankruptcy petition was filed on August 23, 1991. Secondly, the automatic dismissal of a tax petition is not an "act to collect, assess or recover a claim." Dismissal does not put the county any nearer recovering its taxes, the collection of which, all parties agree, has been automatically stayed. Nor is the automatic dismissal itself an "act."

Affirmed.

■

**3.** In its brief Carson cites a number of cases in an attempt to deflect *Gull Air.* We have read all the cases and find them distinguishable. In *In re Nejberger,* 120 B.R. 21 (E.D.Pa.1990), for example, the payment of state delinquent taxes as a condition to a renewal of a liquor license was stayed, but this was because discretionary, affirmative action by the licensing agency was involved in considering the license application. In *Matter of St. Amant,* 41 B.R. 156 (Bankr.D.Conn. 1984), the postpetition redemption period in a strict foreclosure proceeding was stayed where state law required the court to act affirmatively and exercise discretion in setting the redemption period. *In re Fuller,* 134 B.R. 945 (Bankr. 9th Cir.1992), is an example of the automatic stay preventing a prepetition lien (here a federal tax lien) from attaching to property acquired postpetition. At issue were subparagraphs (a)(4) and (a)(5) of section 62, where the term "act" has been construed broadly. *In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540, 1544–45 (2d Cir.1989), also gives "act" a broad interpretation to stay the creation or perfection of a lien which would have the effect of depleting the estate.