In re WENGERT TRANSPORTATION, INC., d/b/a City Delivery, Debtor.

WENGERT TRANSPORTATION, INC., d/b/a City Delivery, Plaintiff,

v.

CROUSE CARTAGE COMPANY, T. Scott Bannister, North Iowa Express, Inc., Le Mars Transfer Company, Inc., Kile Transfer Corp., and Thomas E. Leahy, Defendants.

No. 84–00146.

United States Bankruptcy Court, N.D. Iowa, E.D.

March 31, 1986.

J. Richard Johnson, Cedar Rapids, Iowa, for plaintiff.

T. Scott Bannister, Des Moines, Iowa, for Crouse Cartage Co.

Thomas E. Leahy, Des Moines, Iowa, for North Iowa Exp., Inc., LeMars Transfer Co., Inc., Kile Transfer Corp.

Ted Metier, Iowa Dept. of Transp., Transp. Regulation Authority, Des Moines, Iowa, for intervenor, IDOT.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

On December 27, 1983, Wengert Transportation, Inc., d/b/a City Delivery ("the debtor") filed an application with the Iowa Transportation Regulation Authority ("the TRA") for a certificate of public convenience and necessity pursuant to IOWA CODE § 325.12 (1983) and was issued a temporary certificate. Protests to the application were subsequently received by the TRA from Crouse Cartage Company, North Iowa Express, Inc., Le Mars Transfer Co., Inc., and Kile Transfer Corp. ("the protestants"). The TRA scheduled evidentiary hearings which were to have been held at three different locations in the state during the period June 18 to July 25, 1984. Prior to that time, on April 26, 1984, the debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code. On May 23, 1984, the protestants filed a motion for summary judgment with the TRA. The protestants alleged, *inter alia,* that based upon the April 26, 1984 bankruptcy petition the TRA should review the financial fitness of the debtor as required by IOWA CODE § 325.8 (1983). Thereupon the TRA issued an order staying proceedings and ordered that the motion for summary judgment come on for hearing on June 20, 1984.

On June 15, 1984, the debtor filed a complaint for a temporary restraining order and preliminary injunction and for an order directing compliance with the provisions of 11 U.S.C. § 362. On June 18, 1984, this court, Thinnes, J., entered a temporary restraining order which was to extend until June 28, 1984. By stipulation of the parties the temporary restraining order was extended until further order of this court and the debtor has continued to operate under its temporary certificate.

The parties have stipulated that no questions of material fact are in issue and thus this matter may be treated as cross motions for summary judgment. The following questions of law appear to be presented:

1. Is the automatic stay of 11 U.S.C. § 362 applicable to the administrative proceeding now pending before the TRA?

2. If otherwise applicable, is the automatic stay of section 362 rendered nonapplicable to the administrative proceeding by virtue of 11 U.S.C. § 362(b)(4)?

3. If the automatic stay of section 362 is inapplicable to the administrative proceeding in question should this court issue a preliminary injunction against the continuation of such proceeding under 11 U.S.C. § 105(a)?

■ 1. The debtor argues that section 362(a)(1) of the Code is applicable to the TRA proceeding in issue. Section 362(a)(1) provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). On its face section 362(a)(1) stays only the commencement or

continuation of proceedings against the debtor. Here the debtor itself commenced the administrative proceeding. It is clear that the automatic stay does not apply to actions commenced by the debtor, either before or after bankruptcy. *See In Re Ruble,* 34 B.R. 37 (Bankr.N.D.Ohio 1983); *In Re Regal Const. Co., Inc.,* 28 B.R. 413 (Bankr.D.Md.1983). Section 362 does not speak to actions brought by the debtor which might inure to the benefit of the estate. *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel,* 682 F.2d 446, 448 (3d Cir.1982).

It might be argued however that while the debtor remains free to apply for its permit, other parties, who have a statutory right to resist such application and whose adversary participation is essential to the effective functioning of the agency licensing regimen, are stayed under section 362 from resisting the application. The due process implications of such an argument are disturbing. This argument was emphatically rejected by the court in *St. Croix Hotel,* which held that whether a particular proceeding is subject to the automatic stay is to be determined by the posture of the proceeding at its inception. *See id.,* 682 F.2d at 449. Thereafter the determination does not change regardless of changes in the posture of the parties during different stages of the litigation. *Id.* The rationale underlying the *St. Croix Hotel* holding is that a debtor may not use the automatic stay as a sword rather than a shield. In the matter sub judice the character of the proceeding as "debtor initiated" was fixed when the debtor applied for its permit. The automatic stay is therefore wholly inapplicable either to the proceeding itself or to the lawful actions of parties having a statutory right to be heard therein.

■ 2. Even if the automatic stay were otherwise applicable to the TRA proceeding, the proceeding is not subject to the stay because of the exception contained in section 362(b)(4) which provides in relevant part:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

. . . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(4). In this matter the debtor initiated the TRA proceeding by filing its application pursuant to IOWA CODE § 325.12. Both the TRA and the protestants now wish the proceeding to continue. Section 362(b)(4) thus expressly applies if this proceeding is one by the TRA to enforce the TRA's regulatory powers. The TRA is a division of the Department of Transportation established under IOWA CODE §§ 307.14–15. The TRA is authorized to promulgate rules and regulations applicable to motor carriers, IOWA CODE § 325.3, and is given comprehensive authority to regulate common carriers in the state. IOWA CODE § 325.2. One of its affirmative responsibilities is to issue "certificates of public convenience and necessity" pursuant to chapters 325 and 327A of the Iowa Code. IOWA CODE § 307.18. IOWA CODE § 325.6 makes it unlawful for a common carrier to operate intra-state without first obtaining the required certificate. IOWA CODE § 325.7 requires the TRA to find that the service proposed to be rendered "will promote the public convenience and necessity" before a certificate is issued. The TRA is required to hold public hearings, or via an alternative method, to provide an opportunity for protests to the proposed application. IOWA CODE §§ 325.7, 325.13. Among the various findings which the TRA must make before issuing a certificate is the finding that the applicant is financially able to carry out the terms and conditions imposed on it by law. IOWA CODE § 325.8. Among the financial obligations imposed is the requirement that an applicant carry the requisite insurance or surety bonds, or, in certain cases, provide satisfactory proof of solvency in lieu thereof. IOWA CODE § 325.26.

The enabling rules, set out in the Iowa Administrative Code, provide somewhat more specific guidelines for certification. *See* I.A.C. Vol. X, § 820, ARTICLE F, chapter 4. Section 820–[07, F] 4.2(325) sets out the requirement for insurance. Subsection 4.15(325) details the various requirements for certification. Paragraphs 4.15(4) and (5) provide the specific standards whereby the agency is to determine financial fitness. A careful reading of the relevant Iowa statutes and agency rules makes clear that the TRA is a regulatory agency within the meaning of section 362(b)(4) of the Bankruptcy Code. That is not the end of the analysis. Section 362(b)(4) does not immunize any and all official agency actions but only those "to enforce such governmental unit's police or regulatory power...." 11 U.S.C. § 362(b)(4). An examination of the history of section 362(b)(4) is necessary in order to understand its precise meaning.

Under the former Bankruptcy Act and Rules, the automatic stay was generally not applicable to proceedings affecting the public health or safety or to certain other governmental regulatory activities. *See* Bankruptcy Act § 314, 11 U.S.C. § 714, *reprinted in* 1 *App. Collier on Bankruptcy* (15th ed. 1985) at 192; Rule Bankr.Pro. 11–44, *reprinted in* 14 *Collier on Bankruptcy* (14th ed. 1976) at 11–44–1 *et seq.* Section 362(b)(4) is a codification of the former statutory and case law policy. The legislative history makes clear that the statutory exemption from the stay is to be narrowly construed:

> Additionally, Congressman Don Edwards, Chairman of a subcommittee of the Judiciary Committee considering the Bankruptcy Code, observed:

> "This section [362(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate. [124 Cong. Record H 11089, *reprinted in* [1978] U.S.

Code Cong. & Ad.News 5787, 6436, 6444–6445.]"

*State of Mo. v. U.S. Bkrtcy Court, Etc.,* 647 F.2d 768, 776 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982).

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

House Report No. 95–595, 95th Cong., 1st Sess. (1977) at 343, *reprinted in* 2 *App. Collier on Bankruptcy* (15th ed. 1985). *See also* Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) at 52, U.S.Code Cong. & Admin.News 1978, pp. 5838, 6299, *reprinted in* 3 *App. Collier on Bankruptcy* (15th ed. 1985).

The most important factor in determining whether the section 362(b)(4) exception applies is whether the challenged state action is in conflict with the policies of the Bankruptcy Code. *See Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Under *Perez,* a two-step analysis is required: first, the state and federal laws must be construed; second, the court must determine the constitutional question whether state and federal law are in actual conflict. *Id.,* 402 U.S. at 644, 91 S.Ct. at 1708. In making the *Perez* determination, the effect and not the actual or stated purpose of the state law is the important factor. *Id.,* 402 U.S. at 651–52, 91 S.Ct. at 1712; *In Re Sampson,* 17 B.R. 528, 530 (Bankr.D.Conn.1982). Any state law which frustrates the full effectiveness of federal law is invalid under the Supremacy Clause. *Perez,* 402 U.S. at 652, 91 S.Ct. at 1712; *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

In order to determine the applicability of section 362(b)(4) courts appear to have

adopted two principal tests. The "pecuniary interest test" focuses on whether the government action interferes with the relief provided by the Bankruptcy Code for a pecuniary purpose rather than in furtherance of the public health, safety and welfare. *See In Re Thomassen,* 15 B.R. 907, 909 (Bankr.App. 9th Cir.1981). Under the pecuniary interest test the exercise of a governmental unit's police or regulatory powers to protect the financial interest of a favored class of individuals, rather than to promote the general welfare, is invalid and is stayed despite section 362(b)(4). *See id.* at 909. Thus a license revocation proceeding undertaken for a pecuniary purpose not related to health and safety is subject to the automatic stay. *Id.* at 908–909, n. 1.

In *Perez,* the court struck down the Arizona financial responsibility law as unconstitutional to the extent it compelled the payment of pre-petition judgments as a condition for retention of a driver's license. *See also Sampson, supra* (state financial responsibility law designed to protect pecuniary well being of judgment creditors was not excepted from stay by section 362(b)(4)). The leading Eighth Circuit case, *State of Mo. v. U.S. Bkrtcy. Court, supra,* appears to apply the pecuniary interest test. In that case, a state receiver had attempted to exercise control over stored grain held in the debtor's silos, and invoked the jurisdiction of the Missouri courts to that end. In holding section 362(b)(4) inapplicable the court stated:

> In light of the legislative history and court decisions under the earlier bankruptcy act, we believe that the term 'police or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the *res* or property by the bankruptcy court.
>
> . . . .
>
> We conclude that Missouri's grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors' property and not to matters of public safety and health. Missouri's laws, by governing the opera-

tion and liquidation of grain warehouses, directly conflict with the control of the property by the bankruptcy court and, therefore, do not fall within the section 362(b)(4) exception.

*Id.,* 647 F.2d at 776.

The second test, the "public policy test," focuses on whether the agency is acting primarily pursuant to its quasi-legislative or quasi-executive powers in enforcing the public interest, or is acting in a quasi-judicial capacity to settle disputes which principally concern the immediate parties. *See In Re Dan Hixson Chevrolet Co.,* 12 B.R. 917 (Bankr.N.D.Tex.1981). Actions undertaken in the latter capacity are not protected by section 362(b)(4).

■ Regardless of the test utilized, it is often difficult to draw the precise line between protected and unprotected acts. Frequently the deciding factor will be whether the governmental action threatens the assets of the estate. However, under either test it is not sufficient merely to show that the governmental action will threaten the debtor's reorganization or indirectly impose costs on the estate. The operation of the estate by the trustee is subject to all generally applicable non-bankruptcy law, including valid state licensing requirements. *See* 28 U.S.C. § 959(b); *In Re Canarico Quarries, Inc.,* 466 F.Supp. 1333, (D. Puerto Rico 1979). The fact that a particular state law may totally frustrate the debtor's reorganization is irrelevant, providing the law in question is one of general applicability and does not violate the policy of the Bankruptcy Code. *See e.g. In Re Thomassen, supra.*

■ While agency actions which have the effect of frustrating the debtor's fresh start by compelling payment of pre-petition debts are void and subject to the automatic stay, it is clear that the police power of the state may legitimately reach numerous post-petition financial obligations of the debtor which affect the public health, safety and welfare. *See Perez v. Campbell, supra* (suggesting that state financial responsibility laws intended to insure future

obligations of debtor would not run afoul of federal bankruptcy law); *Commodity Futures Trading v. Incomco, Inc.,* 649 F.2d 128, 133 (2d Cir.1981) (section 362(b)(4) exempted from stay the act of the Board in enjoining future dealing of debtor who had been found to have engaged in dishonest conduct).

Similarly, section 362(b)(4) protects various punitive actions against a debtor even though these may have a devastating effect on reorganization. *See In Re Thomassen, supra* (revocation of license for medical malpractice and fraud upheld); *In Re Herr,* 28 B.R. 465 (Bankr.D.Me.1983) (action disqualifying debtor from receiving certain future unemployment benefits because of past fraudulent claims upheld); *Donovan v. TMC Industries, Ltd.,* 20 B.R. 997 (N.D.Ga.1982) (action by Secretary of Labor to enjoin sale by debtor of goods made in violation of Fair Labor Standards Act held exempt from stay); *In Re Cousins Restaurants, Inc.,* 11 B.R. 521 (Bankr. W.D.N.Y.1981) (right of town to enforce zoning ordinance against debtor approved).

 In the matter sub judice, the TRA is obligated by law to make a determination of the debtor's financial fitness prior to issuing a permanent certificate to the debtor. The statutes and rules applicable to that determination do not on their face appear to discriminate against debtors in bankruptcy. The purpose of the "financial fitness" determination is to promote the general welfare by preventing financially irresponsible carriers from causing loss to shippers. Although this involves "pecuniary considerations," there is nothing to suggest that the law is designed to aid

creditors in the collection of pre-existing debts. Providing the TRA applies the statutory financial fitness criterion without reference to the debtor's past financial troubles and petition in bankruptcy, there is no conflict between the state law and the Bankruptcy Code.[1] The debtor may not shield itself from the normal procedure required to obtain certification by the expedient of filing a bankruptcy petition.[2] Although the purpose of the automatic stay is to promote the debtor's rehabilitation, that rehabilitation must be undertaken in full compliance with all other valid state and federal laws. 28 U.S.C. § 959(b). *See Canarico Quarries, supra.*

3. Although the debtor's complaint requests a "temporary restraining order and preliminary injunction" as well as an order directing compliance with section 362, the debtor has not even alleged, much less offered to prove, the four elements necessary for issuance of a preliminary injunction under 11 U.S.C. § 105(a). The debtor has merely made a conclusory allegation that it will suffer irreparable harm if the TRA is not enjoined. In addition to proving irreparable harm, the debtor must establish all the requisite elements for a preliminary injunction and bears a heavy burden of proof on each element. *See Dore & Assoc. Contracting v. American Druggists' Ins.,* 54 B.R. 353, 357–58 (Bankr.W.D. Wis.1985).

 Although in appropriate circumstances the bankruptcy court has power under section 105(a) to enjoin governmental acts which are exempt under section 362(b)(4) from the automatic stay, *see State*

---

1. It would of course be wholly illegal for the TRA to take the debtor's bankruptcy into account in determining financial fitness, regardless of whether any state laws, rules, or agency policies mandate otherwise. The debtor's financial fitness must be determined on the basis of its post-petition assets and liabilities as well as the debtor's "track record" since reorganization began. Consideration of discharged liabilities or the debtor's pre-bankruptcy financial posture would violate the provisions of the Bankruptcy Code, *see* 11 U.S.C. § 525(a), and would provide an appropriate basis for this court to grant injunctive relief.

2. A different case would be presented if this were a state action to revoke a permanent operating certificate on the ground of the debtor's bankruptcy. In that event, arguably the agency would be interfering with an asset of the estate, 11 U.S.C. § 541, and thus would be subject to the automatic stay under 11 U.S.C. § 362(a)(3). That is not the case here however since the debtor has never acquired a permanent certificate and thus the estate never acquired such interest under section 541.

of Mo. v. U.S. Bkrtcy Court, supra, 647 F.2d at 776, that power should be exercised sparingly and only when absolutely necessary to effectuate the policy of the Bankruptcy Code. The debtor has not shown that the present matter warrants such action. If, after the TRA proceeding goes forward, the debtor is able to demonstrate by clear and convincing evidence that the TRA is engaging in acts which discriminate against the debtor because of the debtor's petition in bankruptcy, and if the debtor can meet the necessary standards for injunctive relief, this court retains jurisdiction to provide such relief. See footnote 1; Dore & Assoc. Contracting, supra.

The debtor's complaint must be dismissed with prejudice.