**In re NATIONAL CATTLE CONGRESS, INC., Debtor.**

**Bankruptcy No. 93–61986KW.**

United States Bankruptcy Court, N.D. Iowa.

Jan. 20, 1995.

John Titler, Cedar Rapids, IA, for debtor.

Jeffrey Farrell, Asst. Atty. Gen., Des Moines, IA, for Iowa Racing and Gaming Com'n.

Thomas Fiegen, Cedar Rapids, IA, for Unsecured Creditors' Committee.

## ORDER .

PAUL J. KILBURG, Bankruptcy Judge.

On December 12, 1994, the above-captioned matter came on for hearing pursuant to assignment. Attorney John Titler represented Debtor National Cattle Congress, Inc. Assistant Attorney General Jeffrey Farrell represented Defendant Iowa Racing and Gaming Commission (the "Commission"). Attorney Tom Fiegen represented the Unsecured Creditors Committee. The matter before the Court is Debtor's Motion for Determination Regarding Application of Automatic Stay to Revocation Resolution of Iowa Racing and Gaming Commission. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## STATEMENT OF THE CASE

Debtor filed its Chapter 11 petition on December 16, 1993. Debtor is in the business of conducting greyhound racing at the Waterloo Greyhound Park in Black Hawk County pursuant to a pari-mutuel dog racing license from and under the supervision of the Iowa Racing and Gaming Commission. In July 1994, the Commission renewed Debtor's license for the live racing season from November 1, 1994 through April 23, 1995.

Legislative changes in March 1994 allowed race track facilities to operate expanded, casino-style gaming such as slot machines. Debtor has projected that this expanded gambling capability would give it long term viability. The new law, however, requires passage of a county referendum prior to installation of slot machines at the track. On September 27, 1994, a referendum on the operation of gambling games at the Waterloo track was defeated in Black Hawk County for the second time.

At a hearing held November 4, 1994, the Commission determined that it would revoke Debtor's pari-mutuel dog racing license. Its written ruling dated November 30, 1994, bases its decision on Debtor's failure to demonstrate financial responsibility and long term viability. The Commission asserts this conclusion was reached through consideration of Debtor's financial information, statistics concerning mutuel handle and the results of the two recent referendums. The Commission decided on November 4 to revoke Debtor's license effective November 11, 1994 if the license was not voluntarily surrendered prior to that date. Debtor did not surrender its license and the Commission now considers the license revoked.

On November 10, 1994, Debtor filed its Motion for Determination Regarding Application of Automatic Stay to Revocation Resolution of Iowa Racing and Gaming Commission. It simultaneously filed a related adversary proceeding seeking a temporary order restraining the Commission from revoking its license. The Court granted the temporary restraining order, without objection, to remain in effect until the present Motion is determined.

Debtor alleges that the revocation resolution constitutes a violation of the automatic stay under 11 U.S.C. § 362(a)(1) and § 362(a)(3). Debtor moves the Court to declare the revocation null and void and provide a remedy regarding the future operation of the Waterloo track. The Unsecured Creditor's Committee supports Debtor's position and additionally argues that revocation of the license violates the § 525 prohibition against discriminatory treatment based solely on an entity's status as a debtor under the Code.

The Commission argues that:

1) The Commission's revocation resolution is controlled by the exception provisions of § 362(b)(4) which except this action from the broad provisions of § 362(a)(1).

2) The revocation resolution does not violate the provisions of § 362(a)(3) as this conduct does not constitute "control over property of the estate".

3) The revocation resolution does not violate the § 525 prohibition as it was validly based on the financial responsibility requirements of the Iowa Code and was not based on any discriminatory purpose.

## CONCLUSIONS OF LAW

█ When a bankruptcy petition is filed, an estate is created pursuant to 11 U.S.C. § 541(a). The term "estate" is broadly defined in § 541 to include all of a debtor's interest in property whether it is tangible or intangible. Property interests are interpreted in an expansive manner. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983); *Whetzal v. Anderson*, 32 F.3d 1302, 1303 (8th Cir.1994).

█ At the same time that a bankruptcy petition is filed, an automatic stay arises pursuant to 11 U.S.C. § 362(a). A primary purpose of the automatic stay provision is to afford debtors in Chapter 11 reorganizations an opportunity to continue their businesses with their available assets. *Small Business Admin. v. Rinehart*, 887 F.2d 165, 168 (8th Cir.1989). The automatic stay is specifically designed to afford debtor a "breathing spell" free from actions by creditors against the debtor's estate. *In re Briggs Transp. Co.*, 780 F.2d 1339, 1343 (8th Cir.1985). The stay is intended to aid in equitably distributing a debtor's assets. *Id.*

The automatic stay under § 362 prohibits conduct under eight specific categories. Only §§ 362(a)(1) and 362(a)(3) are in controversy in this case. They provide:

(a) except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title,

or to recover a claim against the debtor that arose before the commencement of the case under this title;

.  .  .  .  .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

These provisions are separate and distinct. The Court will separately analyze each subsection.

## PROPERTY OF THE ESTATE

Before the facts of this case can be applied to the appropriate stay provisions, the Court must determine whether the racing license which was issued and in effect at the time of the filing of the petition is property of the estate. The property provisions of 11 U.S.C. § 541 include interests of the debtor of all types. Bankruptcy courts have almost universally applied the broad test enunciated by the Supreme Court in *United States v. Whiting Pools, Inc.*, 462 U.S. at 205, 103 S.Ct. at 2314. This definition is accepted in the 8th Circuit and in the Bankruptcy Courts of the Northern District of Iowa. While the issue is not in significant dispute, the Commission does not stipulate that this license is property of the estate. The Court will, therefore, briefly examine this issue.

█ Debtor cites the Northern District of Iowa case of *In re Newport Star Clipper Ltd. Partnership*, No. L91–00114–W, 1995 WL 237361 (Bankr.N.D.Iowa, March 30, 1992) as authority for the proposition that a liquor license is property of the estate and that this Court has authority to direct the issuance of such a license. While the Court's order in *Newport Star Clipper* supports a finding of property of the estate, the order was entered as a temporary order pending subsequent hearings. The purpose of the issuance of the order was merely to stay matters and to keep debtor in business until the matter could be fully presented and briefed. Other than providing some insight on the issue of property of the estate, *Newport Star Clipper* should be limited to its facts and to the proposition that a temporary order may be entered to preserve the status quo in a li-

censing proceeding. It cannot be read as resolving the multiple issues raised in this case.

Though *Newport Star Clipper* does not provide significant answers in this case, this Court and other courts have discussed, at great length, the property implications of differing types of licenses.

This Court concluded in *In re American Cent. Airlines, Inc.*, 52 B.R. 567, 570 (Bankr. N.D.Iowa 1985), that airport landing slots allocated to debtor constitute property of the estate. The same conclusion was reached in *In re Gull Air, Inc.*, 890 F.2d 1255, 1260 (1st Cir.1989). That court held that debtor's proprietary interest in landing slots, which was limited as to superior rights of the FAA and conditions imposed by FAA regulations, nevertheless constituted property of the estate. *Id.*

A broadcasting license was found to be valuable, intangible property of a debtor's estate in *In re Central Arkansas Broadcasting Co.*, 170 B.R. 143, 146 (Bankr.E.D.Ark. 1994). A certificate of public convenience necessary for a trucking company to do business is property of debtor's estate. *In re Rocky Mountain Trucking Co.*, 47 B.R. 1020, 1021 (D.Colo.1985). A certificate of approval carrying a right to do business for a debtor operating a school is property of the debtor's estate. *In re Draughon Training Inst., Inc.*, 119 B.R. 921, 926 (Bankr.W.D.La.1990).

■ Based on the foregoing authorities and the United States Supreme Court's holding that property interests under the Bankruptcy Code are to be broadly construed, this Court concludes that Debtor's racing license does constitute property of the estate. It is a property interest in which Debtor has, at a minimum, a proprietary interest to be administered by the Bankruptcy Court balanced against the State's legitimate interest in regulation of the subject matter of the license. Within those parameters, the Bankruptcy Code's broad definition of property of the estate, which has been expansively embraced by this Court, ultimately encompasses Debtor's interest in this racing license. *See* 11 U.S.C. § 541(a)(1).

## AUTOMATIC STAY OF ADMINISTRATIVE PROCEEDING, § 362(a)(1) AND GOVERNMENTAL EXCEPTION, § 362(b)(4)

■ The automatic stay provisions of § 362(a)(1) are designed to stay, among other matters, the commencement or continuation of administrative proceedings against the debtor. Congress intended that the stay of administrative action, including license revocation, be broadly applied. The House Report on the application to be given § 362(a)(1) states: "all proceedings are stayed, including arbitration, *license revocation*, administrative, and judicial proceedings. Proceeding in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals." *In re Thomassen*, 15 B.R. 907, 909 (9th Cir. BAP 1981) quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), 1978 U.S.C.C.A.N. 6297. (emphasis added)

The various states' interests in enforcing the public health and welfare under their police and regulatory powers had to be protected because of the broad sweep of § 362(a)(1). This balance was achieved by § 362(b)(4) which states:

> (b) The filing of a petition ... does not operate as a stay—
>
> > (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

Numerous cases have considered the scope and effect of this "governmental exception" to the stay, including several frequently-cited cases from the 8th Circuit.

In *In re Commonwealth Cos.*, 913 F.2d 518 (8th Cir.1990), the Court held that § 362(b)(4) is not limited to governmental actions to protect health or safety nor to instances where imminent and identifiable harm or urgent public necessity exist. In determining whether the governmental exception does apply, the Court considered the parameters of the "pecuniary interest test".

Contrary to the debtors' contentions, our holding in *Missouri v. Bankruptcy Court*,

647 F.2d at 775–76, resolved this problem by classifying an action to protect a "pecuniary interest" in property of the debtor or of the estate as one which directly conflicts with the bankruptcy court's control of that property, perhaps the clearest example of an action resulting in a pecuniary advantage over other creditors.

*Commonwealth,* 913 F.2d at 524.

In *Commonwealth,* the proposed agency action was a claim against the debtor under the False Claims Act in a bid rigging conspiracy. *Id.* at 520. The Court in *Commonwealth* held that because the proposed agency action would not conflict with the Bankruptcy Court's control of property of the debtor or of the estate, and would not otherwise create a pecuniary advantage for the government, the action was not outside the scope of § 362(b)(4) on the ground that it sought to protect the government's pecuniary interest. *Id.* at 525.

This Circuit has also applied the § 362(b)(4) exception to a claim against a debtor for discrimination in violation of Title VII. *E.E.O.C. v. Rath Packing Co.,* 787 F.2d 318, 325 (8th Cir.), *cert. denied,* 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986). However, the exception did not apply in *Missouri v. U.S. Bankruptcy Court* where the state was applying its laws to liquidate the debtor's grain warehouse. *Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768, 776 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). As noted above, the Court held that such state activity was primarily to protect a pecuniary interest in the debtor's property, i.e. the grain in the warehouses, and thus did not fall within the § 362(b)(4) governmental exception. *Id.*

This Court considered the applicability of the governmental exception in *In re Wengert Transp., Inc.,* 59 B.R. 226 (Bankr.N.D.Iowa 1986). A state agency was considering whether the debtor should retain its certificate of public convenience in order to continue trucking. *Id.* at 227. The Court noted that in applying the pecuniary interest test, the deciding factor will frequently be whether the action threatens estate assets. *Id.* at 230. The fact that a particular law may threaten reorganization is irrelevant if the law is of general applicability and not in violation of the policies of the Bankruptcy Code. *Id.* A debtor may not shield itself from normal certification proceedings by filing a petition in bankruptcy. *Id.* at 231. The state's obligation to determine the debtor's financial fitness indicates a purpose to promote the general welfare. *Id.* The Court held that the agency's proceedings determining whether to issue a certificate of public convenience were excepted from the stay under § 362(b)(4). *Id.* at 231.

■■■ To summarize the application of § 362(a)(1) and § 362(b)(4) to this case, the administrative agency seeks to revoke the gaming license of Debtor. The license constitutes property of the estate pursuant to § 541 of the Code. Case law provides that § 362(a)(1) must be broadly construed. So applied, § 362(a)(1) stays the commencement of an action by this administrative agency to revoke the gaming license of Debtor unless § 362(b)(4) provides an exception. Section 362(b)(4) was intended to be given a narrow construction to permit governmental units to pursue actions to protect the public health and safety. The 8th Circuit has defined this relationship as follows:

> In light of the legislative history in court decisions under the earlier bankruptcy act, we believe that the term "police or regulatory power" refers to the enforcement of state laws affecting health, welfare, morals and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court.

*Missouri,* 647 F.2d at 776. The ultimate issue for this Court's determination, therefore, is whether the conduct involved in this case constitutes control of the property of this bankruptcy estate, and if so, the point at which such control occurs. The Court will return to this issue subsequently in this opinion.

### AUTOMATIC STAY OF CONTROL OF PROPERTY, § 362(a)(3)

Debtor alternatively argues that revocation of the gaming license constitutes a violation of § 362(a)(3). This section provides:

(a) except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of ...

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

The critical language for purposes of the present analysis is "any act ... to exercise control over property of the estate". This clause was added to § 362(a)(3) in the 1984 Bankruptcy Amendments. No explanatory legislative history exists which enunciates the purpose for adding this "control" provision. *See In re Southwest Equipment Rental, Inc.,* 1990 WL 129972, at *3 (Bankr.E.D.Tenn. Feb. 8, 1990). Prior to this amendment, few, if any, cases exist in which administrative action was contested under § 362(a)(3) as compared to § 362(a)(1). However, the addition of the control language has sufficiently changed the focus of § 362(a)(3) to invite litigation in the area of administrative agency action under both sections.

The question with which courts have wrestled is how to reconcile the body of case law which developed under § 362(a)(1) with the added·language of § 362(a)(3). This is particularly true in light of the fact that the term "control" is not defined in the 1984 amendments, nor is it generally defined in the Bankruptcy Code. Case law considering "control" prior to 1984 focused on the interaction between §§ 362(a)(1) and 362(b)(4). As no case law existed on this precise issue, a natural point of reference was the case precedent from § 362(b)(4). Still, few courts have specifically held that § 362(b)(4) is applied directly in interpreting the control language of § 362(a)(3). *Cournoyer v. Town of Lincoln,* 790 F.2d 971, 977 (1st Cir.1986).

The immediate problem in construing these provisions is that by its own terms, the § 362(b)(4) exception does not apply to stays under § 362(a)(3). Also, the § 362(b) exceptions are intended to be read narrowly. *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581, 590 (9th Cir. 1993). There is no statutory provision which provides for a governmental powers exception to the § 362(a)(3) stay. *Id.* at 591.

The issue is, therefore, one of defining the control provisions of the amendment to § 362(a)(3). Absent legislative history, a code definition, or apparent case authority, the courts have struggled to reconcile these respective provisions. *See In re Beker Indus. Corp.,* 57 B.R. 611, 625 (Bankr.S.D.N.Y. 1986). The court in *Beker* addresses these issues at length. After considerable analysis, the court held that:

> We thus hold that the scope of the control provision of § 362(a)(3), as applicable to governmental regulation, is governed by the contours of § 362(b)(4) as developed by case authority.

*Id.,* at 626.

This Court interprets *Beker* as standing for the proposition that, absent legislative history which shows a congressional intent to change the present balance between a state's right to protect its public health and welfare and the bankruptcy court's statutory obligations to protect assets of the estate, and absent any prior interpretive case law, the courts must seek an accommodation which is consistent with the existing balance.

This interpretation appears most compatible for several reasons: First, as the control provisions of § 362(a)(3) are undefined, courts have reasonable latitude in fashioning an interpretation which is consistent, not only with existing provisions of § 362(a)(3), but also with other interrelated provisions of the Code.

Secondly, the provisions of § 362(a)(1) are more specific in their application than those of § 362(a)(3). The provisions of § 362(a)(1) are limited to judicial or administrative actions against Debtor. Section 362(a)(3) applies to any act by any entity to obtain possession of property or exercise control over property of the estate. This Court construes § 362(a)(3) to have broad application. It would be inconsistent to conclude that Congress intended that the general provisions of § 362(a)(3) would dramatically change the balance which was achieved between § 362(a)(1) and § 362(b)(4).

Third, the most broadly accepted interpretation of the interplay between § 362(a)(1) and § 362(b)(4) is that provided by the 8th Circuit Court as defined in *Commonwealth*. The Court resolved the problem of classifying an action to protect a pecuniary interest in property by defining a pecuniary interest as one which "directly conflicts with the Bankruptcy Court's control of that property". *Commonwealth*, 913 F.2d at 524.

The issue to be resolved in the § 362(a)(1)/§ 362(b)(4) analysis is "control" of the estate property. The same issue is presented under § 362(a)(3). The court must determine if an act has occurred which directly conflicts with court control over property of the estate. No substantive difference exists which justifies different analysis between these Code sections. Creating an artificial distinction and promulgating different standards of interpretation would undermine the balance which has been sought by existing case law between the States and the Federal government under § 362(a)(1). It would eliminate § 362(a)(1) as a relevant Code provision by subsuming it into § 362(a)(3). It is more consistent, both analytically and practically, to treat these terms in a similar manner. This attempt at consistency was the essence of the Court's decision in *Beker*. This Court agrees with that conclusion. This analysis also seems most consistent with the United States Supreme Court's findings in *Board of Governors v. MCorp Financial, Inc.*, 502 U.S. 32, 39, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991).

In summary, the analysis under § 362(a)(1) and § 362(a)(3) must focus upon the identical issue; control of property. A gaming license is property of the estate. Therefore, the true issue is whether the Commission's action constitutes control of this property.

### CONTROL

The standard for determining "control" over property of the estate must be defined. The Court must then determine, utilizing that definition, if control has taken place by the agency and if so, the point at which legal control occurred.

The case law establishes that no one act by an agency can ordinarily be determined to constitute the exercise of control. Ordinarily, the interplay between the bankruptcy estate and the agency action constitutes a continuum in which the agency has complete discretion at one end of the continuum under § 362(b)(4) when it is exercising its police or regulatory power in enforcing state laws which affect the health, welfare, morals and safety of its residents. The opposing end of the continuum involves conduct in which an agency's police or regulatory purpose is minimal but its involvement with the estate property is so substantial as to constitute control which is in direct conflict with the bankruptcy estate.

Various definitions of control exist. At least one Court has considered "control" to mean "exercise authority or dominating influence over; direct; regulate; to hold in restraint; check" as defined by the American Heritage Dictionary. *See Southwest Equipment*, 1990 WL 129972, at *3. This is a very broad definition and goes beyond the parameters that most courts have applied to a § 362(a)(1) analysis. While a determination of control is often elusive, examples exist of when a State or State agency has assumed undeniable control of property. The clearest example is that in *Missouri* with the seizure of grain from a debtor by an agency of the State. *Missouri*, 647 F.2d at 777. Many cases also hold that an agency has not assumed control though the line of demarcation is frequently less clear. The point is that courts are ordinarily required to use a case-by-case analysis guided by the function and purpose of State agencies as well as the function and purpose of the bankruptcy court.

One of the few guiding principles in resolving the natural tension between agency action and bankruptcy court jurisdiction is that the agency will be given every reasonable opportunity to carry out its duties within the governmental framework. There is little doubt that this is the principle enunciated in this circuit, *see Commonwealth*, 913 F.2d at 527, as well as the United States Supreme Court. *See MCorp Financial*, 502 U.S. at 39, 112 S.Ct. at 464.

In *MCorp,* the Supreme Court held that Federal agencies must be given wide latitude in carrying out their function of enforcing the government's police or regulatory power. The court stated:

> MCorp's broad reading of the stay provisions would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity. Such a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative agencies and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts.

*MCorp Financial,* 502 U.S. at 39, 112 S.Ct. at 464.

The Supreme Court also concludes that the issue of control is seldom identifiable as a single act but rather constitutes a continuum of conduct which must be examined on a case-by-case basis. The Court notes that agency action often may conclude with the entry of an order that affects the bankruptcy court's control over property of the estate. *MCorp Financial,* 502 U.S. at 39, 112 S.Ct. at 464. However, the *possibility* of an order which exercises control is insufficient in and of itself to conclude that present control exists. *Id.* The Court, in summary, stated:

> If and when the Board's proceedings culminate in a final order, and if and when judicial proceedings are commenced to enforce such an order, then it may well be proper for the Bankruptcy Court to exercise its concurrent jurisdiction ...

*Id.*

Similar issues were discussed by the Bankruptcy Court in *Draughon Training,* 119 B.R. at 922. This case presents a view of the control issue which is consistent with *MCorp* as well as Eighth Circuit authority. In *Draughon,* the state education association denied the debtor's certificate of approval which, like Debtor's racing license, was required for the debtor to do business. *Id.* The association found that the debtor violated regulations regarding, among other things, financial soundness. *Id.* at 923. The court concluded that this finding by the asso-

ciation did not violate the § 362(a)(1) stay because of the § 362(b)(4) governmental exception. *Id.* at 925.

The court further distinguished between the agency's finding of a violation and the denial of the certificate which suspended the debtor's authority to conduct business. *Id.* It concluded that as the certificate constituted property of the estate, denying renewal of the certificate constitutes control over property of the estate in violation of § 362(a)(3). *Id.* at 926. As Debtor points out, even *Beker,* upon which the Commission relies, notes a distinction between proceedings revoking licenses, which are more properly classified as actions against property of the estate, and proceedings concerning regulation of use of property, which are exempted from the automatic stay under § 362(b)(4). *Beker,* 57 B.R. at 629.

A continuum of conduct exists which the Court must evaluate in determining whether the agency has assumed control of property of the estate. Along this continuum, in the present case, the Commission's proceeding which resulted in a resolution revoking Debtor's racing license must be distinguished from the actual act of revoking the license. It is the conclusion of this Court that the commencement of the Commission's hearing on November 4, 1994 constituted a valid exercise of the Commission's regulatory powers which did not involve control of estate property as that term has been defined in this ruling. Therefore, the holding of the hearing itself did not violate the control provisions of § 362(a)(1) or § 362(a)(3).

However, at the end of its hearing, the Commission determined that it would revoke the gaming license of Debtor. It allowed Debtor a period of time within which to turn in its license or the license would automatically be revoked. At that point, the act to revoke the license constituted control over property of the estate which violated the automatic stay provisions of § 362(a)(1) and § 362(a)(3). Revocation constitutes maximum control over Debtor's racing license as the act destroys any value which this property has to the estate. The conclusion that revocation constitutes control

over estate property is consistent with the result reached in *Missouri* and *MCorp* which both hold that regulatory provisions in direct conflict with control of property by the Bankruptcy Court violate the automatic stay. *Missouri*, 647 F.2d at 776; *MCorp Financial*, 502 U.S. at 39, 112 S.Ct. at 464. Thus, the Commission could not revoke Debtor's license without first seeking relief from the automatic stay. As the attempted license revocation resulted in the Commission's control over property of the estate, the automatic stay renders the actual revocation void *ab initio. See Hillis Motors*, 997 F.2d at 594.

### DISCRIMINATORY TREATMENT, § 525(a)

The Court has determined that the point at which the Commission took control of the property of the estate was the actual revocation of the license. The Court has also concluded that the agency action up to the point of the actual revocation constituted agency action not in violation of the stay. The Unsecured Creditors' Committee, on behalf of Debtor, has alleged that the Commission's action was discriminatory in violation of § 525(a). As the Court has determined that the agency action, up to the point of the actual revocation, was appropriate, the Court must evaluate that conduct within the parameters of § 525 to determine if that action constituted discriminatory treatment as alleged by the Unsecured Creditors' Committee.

The applicable sections of § 525(a) state:

(a) Except as provided in the Perishable Agricultural Commodities Act, 1930, the Packers and Stockyards Act, 1921, and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943, a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

A governmental unit may not revoke a license solely because a debtor is a debtor under the Code or has been insolvent before the commencement of the case. 11 U.S.C. § 525(a). However, this prohibition is not violated where the denial of a license is based on other factors such as the debtor's lack of financial responsibility. *In re Will Rogers Jockey & Polo Club, Inc.*, 111 B.R. 948, 954 (Bankr.N.D.Okla.1990) (holding that debtor's pari-mutuel racing license application was validly denied). Section 525(a) does not prohibit a state agency's examination of financial responsibility pursuant to state regulations in determining whether to suspend a debtor's license. *In re Christmas*, 102 B.R. 447, 448 (Bankr.D.Md.1989) (concluding that horse trainer's license was validly suspended).

Iowa Code chapter 99D requires that racing license applicants must demonstrate financial responsibility. Related regulations require that an applicant demonstrate that it is viable and properly financed. The Commission is required to immediately revoke the license of any licensee who is unable to demonstrate financial responsibility. Iowa Code § 99D.9(7).

The Commission's written ruling states that it decided to revoke Debtor's license due to Debtor's failure to demonstrate financial responsibility and viability. Debtor points out that the status of its financial responsibility and viability did not significantly change between the time the license was initially issued in July 1994 and the time of the revocation in November 1994. It asserts that this indicates an underlying discrimina-

tory motive. However, the Debtor's overall situation was altered when the two referendums upon which Debtor bases its plan for reorganization were defeated. Evidence of further projected losses was also before the Commission.

■ In summary, the Commission's conduct between the commencement of the hearing and the passage of the revocation resolution was appropriate agency action not in violation of § 362. Further, the revocation resolution which occurred within this time frame did not constitute discriminatory treatment prohibited by § 525(a). The Commission's resolution was not solely based on Debtor's status as a Debtor under Chapter 11 nor was it based on Debtor's insolvency prior to commencement of this Chapter 11 case. As such, the Unsecured Creditors' Committee's allegation of discriminatory treatment must be denied. The actual revocation has been determined to be void and, therefore, irrelevant to this analysis.

### DISCRETIONARY STAY, § 105(a)

Debtor also requests a discretionary stay of the Commission's actions and other equitable relief under § 105(a). Debtor filed a separate adversary proceeding relating to a request for injunctive relief and a stay under § 105. The Court did grant a temporary stay, without objection, to allow the merits of this controversy to be resolved. That temporary stay will remain in effect until a resolution of these various matters in this ruling.

■ The bankruptcy court's power under § 105(a) should be exercised sparingly. *Wengert*, 59 B.R. at 231. In order to be entitled to such relief under § 105(a), Debtor must meet the usual requirements governing injunctions and show a necessity for the relief. *E.E.O.C.*, 787 F.2d at 325; *American Cent.*, 52 B.R. at 571. These elements include proof of 1) irreparable harm, 2) the likelihood of success of Debtor's reorganization, 3) minimal harm to others and 4) protection of the public interest. *American Cent.*, 52 B.R. at 571.

■ The Court concludes that Debtor has failed to prove these elements and has failed to prove necessity for a discretionary

stay at this time. In addition, most, if not all, of the justification for consideration of a stay has been eliminated by the results reached in this ruling. The Court has determined that Debtor has a property interest in this gaming license. The Court has further determined that the agency action, up to the actual point of revocation of the license, was appropriate and nondiscriminatory agency action.

However, the actual revocation of the gaming license constitutes control over property of the estate and was, therefore, void. The agency cannot revoke this license until such time as a Motion to Lift Stay has been filed and considered by this Court under the provisions of § 362. Until that time, no need exists to consider a stay as all matters presently before the Court are in a posture, because of this ruling, which does not require the consideration of this extraordinary remedy. Thus, the existence of the automatic stay under § 362, as it relates to the revocation of the license, remains in effect and the need for consideration of a discretionary stay, even if established in this record, does not exist.

### SUMMARY

In summary, the license at issue in this case is property of the estate as defined by § 541. As the license constitutes property of the estate, it is subject to the provisions of the automatic stay under § 362. Involvement of a governmental agency in this case ultimately requires a balancing of the agency's right to protect the public health and welfare through its constitutional police and regulatory powers against the Bankruptcy Court's mandate to protect property of the estate for the benefit of creditors.

The point of conflict is defined as the point in time when actual control of property of the estate is in the agency and not the Court. The point of control, in this case, occurred after the passage of the resolution to revoke the license when the agency attempted to revoke the license. This was an act in violation of the § 362 stay and was void. The Commission's proceedings, up to that point, were appropriate agency action and did not violate the provisions of § 525(a) as that

**600**

conduct was not based solely on Debtor's status as a Debtor in bankruptcy or because of its prepetition insolvency.

However, as the agency's revocation of the license constituted control over property of the estate, that action conflicts with the Bankruptcy Court's right to control property of the estate for benefit of the creditors. Thus, the Commission can not revoke the license without first seeking relief from the automatic stay pursuant to § 362 and the agency's attempt to do so is void from its inception and without effect. As the automatic stay under § 362 remains in place as to the revocation, no further relief need be considered, even if established under the extraordinary remedy provisions provided in 11 U.S.C. § 105.

### ORDER

**WHEREFORE,** the Motion for Determination Regarding Application of Automatic Stay to Revocation Resolution of Iowa Racing and Gaming Commission is GRANTED.

**FURTHER,** the Commission's proceedings which resulted in a resolution to revoke Debtor's racing license did not violate the automatic stay.

**FURTHER,** the license revocation itself did violate the automatic stay.

**FURTHER,** the revocation of Debtor's racing license is void *ab initio.*

**FURTHER,** the Commission may not revoke Debtor's racing license without first requesting relief from the automatic stay.

**FURTHER,** the Motion for Injunctive Relief under § 105 is DENIED and a supplemental order will be entered in the adversary proceeding (*National Cattle Congress, Inc. v. Iowa Racing and Gaming Commission,* Adv. No. 94–6162KW) disposing of that matter.

**SO ORDERED.**