OPINION OF THE COURT
George Panebianco, J.
The primary issues in this apparent case of first impression are whether the judgment creditor failed to act in accordance with CPLR 5222-a (c) (4) by not honoring an exemption claim form it received on the 22nd day after it allegedly served the banking institution with the restraining notice, exemption notice and claim forms; and, if so, whether such failure entitles the judgment debtor to an award of costs, reasonable attorney’s fees and a penalty in the amount of $1,000 pursuant to CPLR 5222-a (c) (4) and (g).
Procedural and Factual Background
The following is a chronology of the credible facts as gleaned from the parties’ motion papers and oral arguments. On May *655 10, 2011, a judgment in the amount of $13,235.01 was entered in favor of plaintiff LR Credit 22, LLC (LR Credit) against defendant Thomas A. Eggleston (Eggleston). As part of judgment enforcement, Mel S. Harris and Associates, LLC (MSH) served a restraining notice dated September 8, 2011, an exemption notice and two exemption claim forms upon Northwest Savings Bank (Northwest) at its Lakewood, New York branch.
The exact date of service is unclear.[1] What is clear is that the Lakewood, New York branch forwarded the documents to the Northwest corporate headquarters in Warren, Pennsylvania. On September 20, 2011, the Warren office received the documents, generated a three-page cover letter bearing a date of September 20, 2011 and sent the cover letter, exemption notice and exemption claim forms to Eggleston by regular mail.
On September 22, 2011, Northwest swore to and sent a bank hit (questions and answers in connection with an information subpoena) to MSH. The bank hit indicated that Eggleston’s savings and checking accounts had a combined balance of $4,957.34 and that Northwest was restraining the sum of approximately $3,000 after deducting the $1,740 personal exemption (see CPLR 5222 [i]) and Northwest’s standard processing fee. It also stated that the “last two (2) direct deposits” were from “Seneca Gaming Co,” and described the same as “paycheck[s].”
The court is unable to ascertain the date of the postmark on the envelope Northwest sent Eggleston because he discarded the same. In any event, on September 29, 2011, he signed and dated the exemption claim form. Most importantly here, he checked the line next to the exemption for 90% of earnings for personal services rendered within the last 60 days (see CPLR 5205 [d] [2]). In essence, Eggleston was advising the bank that 90% of his earnings were exempt from collections.
On September 30, 2011, Eggleston’s attorney sent MSH copies of the claim form as well as bank statements covering the period of July through September 2011. The statements revealed that deposits were made into Eggleston’s checking account every 7 or 10 days from a source identified therein as “Seneca Gaming Co Direct Dep.” In his cover letter, Eggleston’s attorney averred that “Mr. Eggleston’s current employer is Seneca Gaming Corporation,” that all direct deposits into the *656 checking account were payroll and that “90% percent . . . are exempt.”
On October 18, 2011, Eggleston’s attorney’s office contacted MSH by telephone and demanded the restraint be lifted. According to MSH, “[a]fter being told that plaintiff is still entitled to 10% of the restrained money and after refusing a conditional release,” Eggleston’s attorney “indicated they would file papers to have the case vacated.”
On October 20, 2011, Eggleston’s attorney sent MSH a letter stating, “I am advised that you have notified Northwest . . . that because the exemption was postmarked and/or faxed on September 29, 2011, you do not believe you have to honor it . . . Please also note that Northwest . . . had not received any papers from you until September 20, 2011.” Eggleston’s attorney closed his letter with a request for “an immediate clarification with the bank that they be authorized to release 90% of the wages received during the 60 days prior to September 8, 2011, which is the day the restraining notice was signed.”
On October 21, 2011, Eggleston’s attorney sent MSH a third and final letter claiming that
“[t]he automatic exemption . . . should be increased to $2,500.00. In addition, under CPLR Section 5205, you should calculate 90% of the direct deposit of the Seneca Gaming Corporation deposit [sic] stated on the bank statements for the 60 days before the restraint and 90% of all funds deposits [sic] subsequent to the restraint and release all funds immediately.”
MSH failed to respond in writing to either of the October letters.
On October 28, 2011, the instant motion was filed.
On October 31, 2011, Eggleston filed a petition under chapter 7 of the United States Bankruptcy Code (11 USC).
On November 2, 2011, MSH authorized Northwest to release the funds, thus rendering moot Eggleston’s request for an order to that effect.
Discussion
As a threshold matter, the court rejects LR Credit’s contention that the automatic stay provision in 11 USC § 362 (a), relating to the filing of a bankruptcy petition, bars this court’s consideration of the instant motion. The automatic stay provision is applicable only to actions or proceedings “against *657 the debtor” (Koolik v Markowitz, 40 F3d 567 [2d Cir 1994]; In re Miller, 397 F3d 726 [9th Cir 2005]; Carley Capital Group v Fireman’s Fund Ins. Co., 889 F2d 1126 [DC Cir 1989]), not actions by the debtor which potentially produce recovery for the estate (Brown v Armstrong, 949 F2d 1007 [8th Cir 1991]; Carley Capital Group v Fireman’s Fund Ins. Co., 889 F2d 1126 [DC Cir 1989]; Rett White Motor Sales Co. v Wells Fargo Bank, 99 BR 12 [ND Cal 1989]; In re Kaiser Aluminum Corp., 303 BR 299 [D Del 2003]; Dimaio Family Pizza & Luncheonette, Inc. v Charter Oak Fire Ins. Co., 349 F Supp 2d 128 [D Mass 2004]; In re Wengert Transp., Inc., 59 BR 226 [ND Iowa 1986]; In re Ruble, 34 BR 37 [ND Ohio 1983]).
Turning next to Eggleston’s “bad faith” claim, it is worth noting that CPLR 5222-a is a statute of relatively recent vintage, and that the case law is sparse.
CPLR 5222-a was intended to “create a legal procedure by which judgment debtors are informed of which funds are exempt and provided an opportunity to assert that the funds in their account are exempt from seizure before the account is completely restrained or executed against” (Sponsor’s Mem, Bill Jacket, L 2008, ch 575, 2008 NY Legis Ann at 395). Assembly committee hearings held prior to the passage of the legislation “brought to light the serious harm caused by the inability of the system to prevent the seizure of exempt funds” (id.).
CPLR 5222-a created an elaborate step-by-step process together with new forms designed to educate the debtor and facilitate the claiming of an exemption. As one court aptly noted:
“CPLR 5222-a (b) (1) requires a judgment creditor serving a restraining notice upon a banking institution to serve an exemption claim notice and two copies of an exemption claim form in the form prescribed by CPLR 5222-a (b) (4) (b) with the restraining notice.
“CPLR 5222-a (b) (3) requires the bank to send the exemption claim notice and exemption claim form to the judgment debtor/depositor by first-class mail addressed to the judgment debtor/depositor at the judgment debtor’s/depositor’s last known address within two [business] days of receipt.
“The judgment debtor may claim the funds on deposit in the bank are exempt from restraint and execution by mailing a completed exemption claim form to the attorney for the judgment creditor or *658 the judgment creditor if the judgment creditor is not represented by an attorney within 20 days of the date of the postmark on the envelope by which the bank sent the exemption claim notice and exemption claim form to the judgment debtor. (CPLR 5222-a [c].) The judgment [debtor] claims an exemption by simply checking the line on the exemption claim form next to the source of the exempt income the judgment debtor claims is on deposit in the account. The judgment debtor may but is not required to provide the attorney for the judgment creditor or the judgment creditor with documentation or proof supporting the claim of exemption. The exemption claim form advises the judgment debtor that providing the attorney for the judgment creditor with proof of the claimed exemption may speed release of the funds. It further advises the judgment debtor that if proper proof supporting the claim of exemption is provided, the attorney must release the funds within seven days. “CPLR 5222-a (d) requires the judgment creditor upon whom an exemption claim form has been served to move within eight days of the date of the postmark on the envelope containing the exemption claim form to object to the claimed exemption” (Midland Funding LLC v Singleton, 34 Misc 3d 798, 801-802 [Nassau Dist Ct 2011]).
The statute, in effect, guarantees that the banking institution will release all funds in the account “eight days after the date postmarked on the envelope containing the executed exemption claim form mailed to the banking institution . . . except where the judgment creditor interposes an objection to the exemption within that time” (CPLR 5222-a [c] [3]). Moreover, the statute provides only one method for making of an objection — a motion pursuant to CPLR 5240, with a hearing to decide the motion no later than 15 days after the date postmarked on the envelope containing the executed exemption claim. At such a hearing, the burden of proof is placed “upon the judgment creditor to establish the amount of funds that are not exempt” (CPLR 5222-a [d]).
In the instant case, it seems disingenuous on the part of LR Credit to argue that Eggleston failed to timely serve an exemption claim form, thereby excusing LR Credit from the duty to honor the claim form or to object in accordance with the statute. First and foremost, the statute measures the 20-day *659 time period for the service of an exemption claim form upon the judgment creditor from “the date postmarked on the correspondence containing the notice and forms” (CPLR 5222-a [c] [1]). Here, while Eggleston may have discarded the actual envelope which contained the banking institution’s correspondence, he did keep the correspondence itself, and that correspondence helps to establish the date postmarked on the correspondence. Thus, since the letter Northwest sent to Eggleston was dated September 20, 2011, the earliest logical date the envelope would have been postmarked is September 20, 2011. Regardless of when MSH served Northwest with the restraining notice, exemption notice and two exemption claim forms, it is clear that Northwest did not serve Eggleston until September 20, 2011, at the very earliest. Therefore, Eggleston’s response on September 30, 2011 was clearly timely.
Second, assuming LR Credit had no actual knowledge of the 12-day delay between the date of the restraining notice and the date of the correspondence from Northwest until October 20, 2011, the date of the judgment debtor’s attorney’s second letter, LR Credit’s position regarding the timeliness of the exemption claim form would still be untenable. The restraining notice was dated September 8, 2011. Even assuming arguendo that LR Credit served the restraining notice upon Northwest personally on September 8, 2011, Northwest had two business days “after receipt of the restraining notice [and other papers]” (CPLR 5222-a [b] [3]) to serve Eggleston. The court takes judicial notice of the fact that September 8, 2011 was a Thursday. Accordingly, Northwest had until Monday, September 12, 2011 to serve Eggleston. Yet, looking at the facts through rose-tinted glasses, LR Credit gives Eggleston no leeway for any possible delay on the part of Northwest.
Not only has LR Credit failed to establish the actual date on which the restraining notice was served upon the Lakewood branch of Northwest,[2] but LR Credit has failed to rebut Eggleston’s proof as to the date postmarked on the correspondence from the Northwest headquarters in Warren, Pennsylvania— September 20, 2011.
Based upon the foregoing, the court finds that Eggleston’s service of the exemption claim form upon LR Credit on September 30, 2011 was timely.
*660 The next question is whether the executed exemption claim form was “accompanied by information demonstrating that all funds in the account are exempt” (CPLR 5222-a [c] [4]).[3] If so, then LR Credit should have instructed Northwest to release the restraint no later than October 7, 2011, rather than November 2, 2011. While the statute assumes that the only information as to the source of the funds in the account will come from the judgment debtor, this case debunks that myth. In the instant case, the bank hit dated September 22, 2011 put LR Credit on notice that the “last two (2) direct deposits” were from “Seneca Gaming Co,” and described the deposits as “paycheck[s].”
That the bank hit was received from Northwest and not Eggleston is immaterial, given the specific inclusion of bank records in CPLR 5222-a (c) (4)’s list of acceptable proof. Surely, the legislature did not intend to exclude from the judgment creditor’s decision-making process sworn information provided to the judgment creditor by the banking institution itself.[3]
[4]
Moreover, on September 30, 2011, Eggleston’s attorney not only provided MSH with copies of the July through September 2011 bank statements, with each direct deposit underscored, but clearly advised MSH in his cover letter that Eggleston’s employer was Seneca Gaming and that the deposits were wages.
Here, LR Credit received “information demonstrating that all funds in the account are exempt” (id.) and yet failed to instruct Northwest to release the funds. Under the circumstances, the court finds that LR Credit callously disregarded its obligation to do the 90% calculation and to instruct Northwest to release the additional exempt amount or, at the very least, if it wished to dispute the validity or the amount of the exemption, to bring the appropriate motion.[5] Instead, MSH chose to inappropriately allow Eggleston’s account to remain frozen under its ill-conceived defense that Eggleston did not timely serve his exemption claim form. Gone are the days when judg *661 ment creditors, for all intents and purposes, were at liberty to unilaterally decide the fate of a claimed exemption. Laws of 2008, chapter 575 rang the death knell to that former practice.
Conclusion
Based upon the foregoing, the court finds that LR Credit failed to act in accordance with CPLR 5222-a (c) (4) by not honoring the exemption claim form and not instructing the banking institution to release all or part of the funds in the account.

. MSH failed to provide the court with proof of the date of mailing of the restraining notice, exemption notice and claim forms, despite the court’s written request for such proof.

. CPLR 5222 (a) authorizes personal service “in the same manner as a summons or by registered or certified mail, return receipt requested.”

. “Information demonstrating that funds are exempt includes, but is not limited to, originals or copies of benefit award letters, checks, check stubs or any other document that discloses the source of the judgment debtor’s income, and bank records showing the last two months of account activity” (CPLR 5222-a [c] [4]).

. The bank hit was subscribed by an employee of Northwest and sworn to before a notary public.

. LR Credit argued, during the course of these proceedings, that when a judgment debtor claims a CPLR 5205 (d) (2) exemption, a court must determine what portion of the 90% is necessary for the reasonable requirements of the judgment debtor and his dependents (see CPLR 5205 [d]).